In the Matter of M. Daniel
**FRIEDLAND.**

No. 379S65.

Supreme Court of Indiana.

Feb. 10, 1981.

M. Daniel Friedland, pro se, Wilcox Ogden & DuMond, Ind. Civil Liberties Union, Richard L. Zweig, Indianapolis, for respondent.

David B. Hughes, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

This cause was initiated in a three-count verified complaint filed by the Indiana Supreme Court Disciplinary Commission pursuant to Admission and Discipline Rule 23, Section 12. During the course of the proceeding, on motion of the Respondent, a grievance filed by James W. Bradford was merged with the complaint as Count IV. In accordance with the provisions of Admission and Discipline Rule 23, an appointed Hearing Officer has conducted a hearing of this matter and filed with this Court his Findings of Fact. On motion of the Respondent, oral argument in this cause was heard on July 2, 1980.

The Respondent now petitions this Court for review, or in the alternative to reopen the hearing; in support of his Petition for Review, the Respondent has submitted a brief and reply brief. The Disciplinary Commission has filed its brief in response to the pleadings of the Respondent and moved that Respondent's reply brief be stricken. The Disciplinary Commission's motion to strike is denied.

The Indiana Civil Liberties Union has moved for leave to file a brief *Amicus Curiae* in this cause and tendered to this Court such brief. The motion of the Indiana Civil Liberties Union is granted and the tendered brief shall be shown as filed.

Counts I, II, and III of the Verified Complaint generally assert that the Respondent attempted to intimidate or improperly influence the Executive Secretary, staff and members of the Supreme Court Disciplinary Commission, and witnesses against the Respondent. Specifically, under all three counts, the Respondent is charged with violating a Disciplinary Rule, engaging in conduct prejudicial to the administration of justice, and engaging in conduct adversely reflecting on his fitness to practice law. Additionally, under Count III the Respondent is charged with filing a suit when it is obvious that this action would serve merely to harass or maliciously injure another.

The Bradford grievance, which was merged at hearing with the above-noted three-count complaint, raises a question as to whether or not the Respondent misrepresented the status of a pending lawsuit in the course of arguing a motion to intervene in another cause. With regard to this supplemental charge, this Court adopts the findings of the appointed Hearing Officer to the effect that there was no misrepresentation. Therefore, we now find that the Bradford grievance is insufficient to support a finding of professional misconduct and, accordingly, is dismissed.

Upon examination of all matters which have been submitted under this cause, consideration of the statements of counsel during oral argument, and review of this Court's records we now find that the Respondent was admitted to the Bar of this State on May 19, 1971. On June 16, 1978, the Respondent was suspended for a period of thirty days beginning August 1, 1978, and on April 15, 1980, the Respondent was suspended for the nonpayment of disciplinary fees. He was reinstated on September 9, 1980.

Relative to the allegations of misconduct set out in the Verified Complaint, this Court now adopts and accepts as its own the findings of the appointed Hearing Officer. Under Count I of the Verified Complaint, we find that since mid-1975 there have been one or more grievances involving the Respondent pending before the Indiana Supreme Court Disciplinary Commission. Referee David B. Caldwell filed a grievance in mid-1975 which eventually culminated in the thirty day suspension of the Respondent. James Bopp and Alfred Bennett filed a grievance in December, 1975, which was subsequently dismissed by the Commission, as was the grievance filed on March 17, 1977, by Anthony E. Thomas. The Bradford grievance, filed on August 4, 1977, has been previously discussed. In mid-1978, the Disciplinary Commission, on its own motion, initiated a grievance against the Respondent; this grievance is the underlying basis of the charges now pending before this Court.

On March 15, 1978, following receipt of a local bar association investigation report into this matter, Sheldon Breskow, Executive Secretary of the Disciplinary Commission, notified the Respondent that the Bradford grievance had been reclassified and docketed as a matter of "misconduct." At the time of receipt, the findings of the Hearing Officer relative to the Caldwell grievance were pending before this Court.

On March 20, 1978, the Respondent, accompanied by three of his clients, appeared without appointment at the offices of the Disciplinary Commission. The Respondent and his clients were offered a conference with Breskow and the Commission Investigator, Cecil L. Melvin. During this conference the Respondent inquired into the grievances against him pending before the

Commission. The Respondent became agitated, uttered profanity, and at one point stated to Breskow, "You are a lying bastard and I'm going to get you." The Respondent was informed that the conference was concluded and escorted to the door by Melvin. Respondent reentered the offices and continued to make accusations in a loud and profane manner. He was pushed out of the office by Melvin.

Respondent appeared again at the Commission offices on April 5, 1978, and delivered a letter dated March 22, 1978. The salutation read "Dear Fellow Attorney"; the letter generally recounted the history of Respondent's difficulties with the Commission, but also contained several personal references to Breskow; for example, referring to him as a "moral reprobate" and accusing him of personal and professional misconduct in the manner in which he was administering the work of the Commission. On the letter delivered by Respondent there was a notation as follows:

"Shel,

This letter will be sent to 1,000 selected lawyers on Monday if all grievances against me aren't dropped—*Buchanan* is next."

Breskow was angered by the letter and viewed it in the nature of an extortion attempt. He disqualified himself to act further in any matters involving the Respondent.

On April 11, 1978, the Respondent called the Commission and left the message that Breskow had "an extra day." Two days later, several major Indianapolis law firms received a letter from the Respondent virtually identical to the letter previously delivered to the Commission. This letter accused Breskow of "perverting the function of the Commission", pursuing "personal animosity", using his office "for personal vendetta" and using his "power base to harass lawyers for personal reasons."

The Respondent continued in his efforts to intimidate Breskow. A few days before the hearing of this cause, Respondent, while riding his bicycle past Breskow's personal residence, shouted to Breskow that he had better hope the Commission did not win this case. The Respondent was aware, at such time, that Breskow was scheduled to appear as a Commission witness.

The above-noted findings demonstrate to this Court an intent on the part of the Respondent to discredit, embarrass, intimidate, and ridicule Breskow. The purpose, likewise, appears to be clear; it was meant to pressure the Commission into dismissing the grievances then pending against the Respondent.

Our findings under Count II supplement those under Count I. We now find that on March 22, 1978, the Respondent appeared without an appointment in the offices of the Honorable Paul H. Buchanan, Jr., Judge, Indiana Court of Appeals. Judge Buchanan has been a member of the Disciplinary Commission from its inception. When the Respondent entered, he yelled, "Buchanan, Buchanan." The Respondent insisted, in a loud and angry tone of voice, that Judge Buchanan meet with the Respondent. Judge Buchanan declined to do so and advised the Respondent that a Court Bailiff would remove the Respondent from the office, if necessary. Respondent replied in a loud and angry manner, "Alright, you are on my list."

On April 5, 1978, the Respondent delivered to the Commission the letter noted under Count I with the notation that "Buchanan is next." On April 21, 1978, the Respondent delivered to the Disciplinary Commission a draft complaint signed by the Respondent, as attorney for Arthur D. Anderson, proposing to sue Judge Buchanan for damages in the sum of $750,000. Anderson had been an unsuccessful litigant represented by Respondent before the Court of Appeals. Handwritten on the face of the draft complaint was the notation:

"To be filed Monday, Shel—I know that Buchanan, not you, calls the shots at the Disciplinary Commission."

As under Count I, this Court must conclude that Respondent's motivation was to bring personal pressure on the members and staff of the Disciplinary Commission so as to affect their official judgment.

Under Count III of the Verified Complaint filed in this Cause, we now find that on December 17, 1975, James Bopp, Jr. and Alfred R. Bennett filed a grievance against the Respondent. It was asserted that the Respondent engaged in professional misconduct during the course of a hearing before the State Employees' Appeals Commission involving the dismissal of Respondent's client, Arthur D. Anderson, from employment at the Indiana Boys School. Bopp, a Deputy Attorney General, represented the Department of Correction and Bennett was Superintendent of the Boys School. The grievance was four and one-half pages in length; it cited specific allegations of misconduct with reference to pages in an accompanying transcript. It was apparently filed in good faith.

Shortly after the grievance was filed, Respondent confronted Bopp at a Bar Association Christmas party and indicated that a suit would be filed against him. Respondent, at a later date, informed Bennett that he would be sorry for joining in the grievance with Bopp and would be sued for having done so. On March 12, 1976, the Respondent filed, *pro se*, a suit against Bopp and Bennett in the United States District Court asserting that the defendants violated the Respondent's civil rights by filing a grievance for the purpose of maliciously chilling the Respondent's first amendment rights to expose atrocities at the Boys School. This cause was dismissed on November 30, 1976, for lack of subject matter jurisdiction; an attempted appeal was dismissed because Respondent failed to tender the fifty dollar filing fee.

During the time of the hearing of this disciplinary action, Respondent, by chance, met Bopp at an Indianapolis restaurant. Respondent told Bopp that another lawsuit was being planned and whether or not Bopp would be named as a party defendant would depend on Bopp's testimony in this disciplinary proceeding.

Seth Lewis was the prosecutor on a drug charge filed against Arthur D. Anderson, a client of Respondent's. On the day Anderson surrendered on this charge, Respondent told Lewis that everyone in this case would be sued in Federal Court and that Lewis was "going to pay for this." Before any verdict was known, Lewis, by written correspondence, advised the Disciplinary Commission that he intended to file a complaint against the Respondent for alleged misconduct in the course of the trial of this drug charge. Anderson was acquitted on February 17, 1976. Lewis was named a party defendant along with Bopp and Bennett in the suit filed on March 12, 1976. The allegation against Lewis was terminated in the same manner as the charges against the other defendants.

Respondent filed, *pro se*, in Federal District Court a class action suit against the Attorney General of Indiana, the Supreme Court Disciplinary Commission, and the members of the Commission on September 8, 1976. Respondent attempted to establish a conspiracy among the defendants to violate the civil rights of the Respondent and other attorneys who represent clients in suits challenging government action. This lawsuit was dismissed for lack of subject matter jurisdiction and the dismissal was affirmed by the 7th Circuit Court of Appeals.

As noted above, James W. Bradford filed a grievance against the Respondent on August 4, 1977. The grievance clearly was filed in good faith. On September 16, 1977, Respondent sued Bradford in the Marion Circuit Court asserting malicious abuse of the disciplinary process and libel. Respondent sought $75,000 in compensatory damages and $1,000,000 in punitive damages. This complaint eventually was dismissed by the trial court and such decision is now final.

On April 5, 1979, the Respondent filed, on behalf of Arthur D. Anderson, a lawsuit against the Honorable Paul H. Buchanan, Jr., in the United States District Court. The complaint in this disciplinary proceeding was filed on March 12, 1979. The lawsuit purported to state a claim against Judge Buchanan for participating in the per curiam decision dismissing Anderson's appeal of his Boys School employment termi-

nation. The suit against Judge Buchanan was dismissed on the ground of judicial immunity.

Each and every one of the above described lawsuits was filed or prosecuted by the Respondent against individuals who had either filed grievances with the Commission against the Respondent, or who had evidenced an intent to file a grievance, or who had participated (by virtue of their office or appointed position) in the administrative handling of grievances filed against the Respondent. This evidence convinces us that the above described lawsuits were designed, intended, filed and prosecuted by the Respondent to harass, intimidate, impede, and discourage the aforementioned parties from pursuing, administering and processing grievances against the Respondent under the disciplinary process provided by Rule A.D. 23. It appears that the Respondent tends to view the threat of, and the filing of, a lawsuit as a club or weapon with which to subdue those who would file or prosecute grievances against him. The record in this disciplinary hearing is literally replete with the Respondent's threats that he yet intends to sue those that have administered and prosecuted this proceeding in the event the outcome of this cause is not to his liking.

Respondent and *Amicus* argue that the Respondent's conduct found in this cause involved the legitimate exercise of constitutionally protected rights. More specifically, Respondent and *Amicus* assert that Respondent's involvement with the Disciplinary Commission's members and staff was constitutionally protected free speech under the First Amendment of the United States Constitution and the filing of lawsuits by Respondent was the legitimate exercise of his right to petition the government for the redress of grievances as protected under the First Amendment to the United States Constitution and Article I, Section 12 of the Indiana Constitution.

█ In the course of their presentations to this Court, Respondent and *Amicus* argue that an individual does not relinquish his rights to petition the government to seek redress through the courts, or to oppose the practices of governmental agencies when admitted to the Bar of this State. This Court agrees with these propositions; however, we also recognize that such statements are not absolute in nature, but merely expressions of concerns which must be measured in the context of competing social values. Our disagreement with Respondent and *Amicus* begins when an attempt is made to mold these propositions into meaningful standards and apply them to the facts present in this case.

█ This Court in the past has not addressed, specifically, the constitutional tension between the First Amendment and the *Code of Professional Responsibility.* Upon reflection of this question, it is our belief that a generalized test cannot be drawn. Each prohibition, circumscribed by the factual setting present in a particular cause, must be examined in light of the affected State interest and measured against the limitation placed on the freedom of expression.

This appears to be the approach which has been taken when weighing First Amendment consideration against solicitation limitations. The United States Supreme Court has held that a state cannot discipline an attorney for solicitation when such conduct was part of the associational activities of the NAACP or ACLU. *N.A.A.C.P. v. Button* (1963), 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; *In re Primus* (1978), 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417. On the other hand, a lower standard of judicial scrutiny has been applied to one-on-one solicitation and prohibitions of this nature have been found not to be violative of the First Amendment. *Ohralik v. Ohio State Bar Association* (1978), 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444. Similar analyses have been employed relative to other attorney disciplinary rules competing with the First Amendment. See, *Bates v. State Bar of Arizona* (1977), 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (Attorney Advertising); *Hirschkop v. The Virginia State Bar* (1976, DC Va.), 421 F.Supp. 1137 (Commenting on Litigation); *Chicago Council of Law-*

*yers v. Bauer* (1975, 7th Cir.), 522 F.2d 242 (Commenting on Litigation).

In the present case, ironically, the Respondent asserts First Amendment protection when the facts belie an understanding of the legal profession's obligation to preserve rights of this nature through the orderly processes of litigation. Respondent attempted to influence public officials by threatening and then introducing factors thought to produce personal hardships on the part of these public officials. The record in this case demonstrates that the Respondent threatened, made, and published critical comments about the Disciplinary Commission, its personnel and its policy, for the purpose of obtaining the discharge of proceedings against him. In his correspondence the Respondent stated, "You are a lying bastard and I am going to get you" and "This letter (containing a derogatory personal attack on the Executive Secretary of the Disciplinary Commission) will be sent to 1,000 selected lawyers on Monday if all grievances against me aren't dropped . . . . Buchanan is next." The Respondent called the Disciplinary Commission and indicated that he was giving them "an extra day." Unfortunately, the specter of physical intimidation is present also in this case. Respondent's demeanor in his unscheduled visits to the offices of the Disciplinary Commission and Judge Buchanan contains unseemly physical undertones.

The evidence in this case also demonstrates that Respondent engaged in a pattern of litigation directed toward intimidating and influencing public officials and adverse witnesses. He attempted to use the lawsuit as a weapon against those who administered and prosecuted grievances against him. His motivation is evident from the fact that he directed this litigation at the individuals involved in the grievance process, only tangentially attacking the merits of the issues to be determined through this process. The Respondent wanted to punish the persons who filed grievances, and intimidate the persons who administered the process.

It is the Constitutional duty of this Court, on behalf of sovereign interests, to preserve, manage, and safeguard the adjudicatory system of this State. The adjudicatory process cannot function when its officers misconstrue the purpose of litigation. The Respondent attempted to influence this process through the use of threats and intimidation against the participants involved. This type of conduct must be enjoined to preserve the integrity of the system. Additionally, the adjudicatory process, including disciplinary proceedings, must permit the orderly resolution of issues; Respondent's conduct impeded the order of this process.

█ In view of the above considerations, this Court concludes that the acts of Respondent, as found by this Court under the complaint filed in this cause, are not protected speech or expression under the First Amendment of the Constitution of the United States and that the imposition of a sanction under these circumstances will not constitute an impermissible infringement of Respondent's right to petition the government for redress under the First Amendment of the Constitution of the United States and Article I, Section 12 of the Constitution of Indiana. Accordingly, this Court now finds under all three counts of the complaint filed in this cause, that the Respondent engaged in conduct prejudicial to the administration of justice which adversely reflects on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(1), (5), and (6) of the *Code of Professional Responsibility*. This Court further finds, under Count III of the complaint filed in this cause, that the Respondent took action on behalf of clients when it was obvious that such action would serve merely to harass or maliciously injure another in violation of Disciplinary Rule 7–102(A)(1).

█ This Court must now determine an appropriate sanction to be imposed. We note at the outset that Respondent has previously been disciplined. *In re Friedland* (1978), 268 Ind. 536, 376 N.E.2d 1126. In that prior action, we found that the Respondent engaged in undignified and discourte-

ous conduct degrading to a tribunal. The misconduct found in the prior proceeding together with the misconduct present in this cause establishes a pattern indicative of a serious behavioral flaw. Respondent does not appear to understand the responsibilities of attorneys admitted to practice in this State. There are limits which have been drawn to guarantee the effective administration of justice. The acts of Respondent demonstrate that he fails to acknowledge even the existence of ethical limitation. Under these circumstances this Court now finds that the strongest form of discipline should be imposed to preserve the integrity of the legal profession and to insure the effective administration of justice. It is therefore ordered that by reason of the misconduct found in this cause the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.