**In the Matter of Donald Mark GARRINGER.**

**No. 49S00–9206–DI–491.**

Supreme Court of Indiana.

Jan. 10, 1994.

Donald Mark Garringer, pro se.

Charles M. Kidd, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

Donald Mark Garringer, the Respondent here, was charged by verified complaint for disciplinary action with several violations of the *Rules of Professional Conduct for Attorneys at Law.* This Court appointed a Hearing Officer pursuant to Ind. Admission and Discipline Rule 23, Section 11(b) and, after hearing, he tendered to this Court extensive findings of fact and conclusions of law. Respondent thereafter petitioned this Court for review of the hearing officer's report and fully briefed his position.

This Court's review in disciplinary cases is *de novo,* and we examine all matters presented. *In re Young* (1989), Ind., 546 N.E.2d 819. Our review is of the entire record tendered in the case, including the Hearing Officer's findings and conclusions, which are given special emphasis as they are the products of direct observation of witnesses. *In re Blackwelder* (1993), Ind., 615 N.E.2d 106, *In re Stanton* (1986), Ind., 492 N.E.2d 1056. Nonetheless, this Court remains the final factfinder and arbiter of misconduct, and we reserve the right to determine an appropriate sanction. *In re Ortiz* (1992), Ind., 604 N.E.2d 602, *In re Rajan* (1988), Ind., 526 N.E.2d 1185. The Respondent's objections to the findings of the Hearing Officer will be resolved within the context of this review process.

We have reviewed all matters submitted, and now find that the charges contained in the disciplinary complaint arise out of Respondent's writing and disseminating a 28–page document, entitled "An Open Statement To The President Of The United States Concerning Federal Judges And Federal Officials Bought And Paid For In The Federal Judicial District Of The Southern District Of Indiana From The Largesse Of Looted Bankrupt Estates" (hereinafter "open statement"), on July 24, 1989. Attached to the open statement was a 58–page document entitled "Appendix To Open Statement To The President Of The United States" (hereinafter "appendix"). The open statement contained allegations of misconduct on the part of officials of the United States Bankruptcy Court for the Southern District of Indiana and the Federal District Court for the Southern District of Indiana in connection with a bankruptcy action heard there in which Respondent participated as counsel for the bankrupts.[1]

---

1. The circumstances leading to Respondent's writing of the open statement are briefly as follow. George and Joyce Wade retained Respondent in December, 1986, to represent them in connection with two bankruptcy petitions they had filed previously. The Wades filed for personal bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to Chapter 7 of the bankruptcy code. Additionally, the Wades filed for Chapter 7 bankruptcy for their business, U.G. Wade Trucking, Inc. Apparently, the Wades wanted Respondent to investigate alleged wrongdoing on the part of the judges and other

Included in the open statement were the following excerpts, culled from paragraph headings and text:

II. Criminal Theft And Concealment Of The Assets Listed On Schedule B-1 Of The U.G. Wade Trucking, Inc. . . .

V. The Failure Of Judicial Officers In The Southern District Of Indiana To Administer Justice . . .

VI. The Criminal Activity In The Wade Bankruptcy Is Not An Isolated Instance, But An Example Of A Pattern Of Racketeering Activity By Corrupt Judges And Lawyers Under The Shield And Authority Of The United States That Is A Matter Of Public Attention And Comment . . .

IIX. [Sic] Charges Based On The Four Corners Of The Record In The Wade Bankruptcy . . .

I charge the Honorable Robert L. Bayt with the failure to require Trustee Hopper to account for bankrupt estate assets as required by law to do so, the failure to require Trustee Hopper to provide information relating to the liquidation of bankrupt estates as required by law to do so, the concealment of record in a malicious scheme with Edward B. Hopper, II, to defeat the administration of justice, the failure to act upon coming into certain knowledge of criminal activity in the liquidation of the estates in the Wade bankruptcy, and, by implication, of sharing in the largesse of looted bankrupt estates. . . .

I charge Magistrate Kennard P. Foster of depriving poor and oppressed litigants of a level playing field in favor of vested and influential players, contrary to his Oath of Office, possibly out of ignorance or instruction from the presiding Judge, the Honorable John Daniel Tinder.

I charge the Honorable John Daniel Tinder of having in his hand definitive evidence of violations of the Laws of the United States, and entering Protective Orders and Stays prohibiting discovery and the administration of justice, contrary to the Laws of the United States,

with the intention of assisting and comforting persons who have violated the Laws of the United States so that they may escape apprehension.

As a whole, the open statement described a far-reaching conspiracy involving judges, bankruptcy trustees, United States Attorneys, and other federal court officials, allegedly devised to illegally convert assets properly belonging to bankrupt estates. The attached appendix consisted of numerous documents, letters, financial statements, cancelled bank checks, and selected excerpts from depositions, presumably intended to document the open statement and support the assumptions and accusations contained therein. Respondent distributed the open statement and appendix to the President of the United States and other high-level federal and state officials, judicial officers, and judges, with the explanation that he had

exhausted all forms of judicial and administrative relief, [and therefore resorted to] writing to [the President of the United States] respectfully in [his] capacity as the Chief Executive Officer of this great country who is charged with the duty of enforcing the Laws and Constitution of the United States.

Respondent concluded the open statement with the following observations:

I realize that bringing these charges may expose me to sanctions and discipline as an attorney . . . [h]owever, I bring these charges without apprehension. I am outraged by the criminal activity that has occured [sic] in the U.S. Bankruptcy Court and the misadministration of justice that has allowed this activity, not only because of the victims who have suffered, but because of what the crooked lawyers and judges have done . . .

The Hearing Officer concluded that Respondent violated Ind. Professional Conduct Rule 8.2(a) in that he made statements with reckless disregard as to their truth or falsity concerning the qualifications and in-

judicial officials involved in their bankruptcies. The allegations of wrongdoing centered on the

liquidation of debts due on Wade Trucking's schedule B-1 accounts.

tegrity of a judge and of other adjudicatory officers; and that he violated Prof.Cond.R. 8.4(d) by engaging in conduct prejudicial to the administration of justice. The Hearing Officer further found that the Commission failed to prove by clear and convincing evidence that the Respondent engaged in conduct intended to disrupt a tribunal contrary to Prof.Cond.R. 3.5(c), as charged in the complaint.

■ Respondent challenges several of the Hearing Officer's findings. He contends that there is no evidence that he made the open statement public. However, we find that Respondent himself indicated on the face of the open statement that it was being distributed to the "U.S. Attorney General, Director, F.B.I. [Certified], Executive Director–Office of the United States Trustee, Indiana Senators and Congresspersons, 7th Circuit Court of Appeals, Indiana Supreme Court, Governor of Indiana, All interested parties." Respondent doesn't challenge this fact, but argues that his report, made to the proper authorities, did not undermine public confidence in the integrity of the judiciary, and, therefore, was not proscribed by the *Rules of Professional Conduct*. Prof.Cond.R. 8.2(a) provides that lawyers "shall not make" offending statements, as they are defined by the rule. Violation does not require that such statements be dispersed among the general public. It is enough that the statements are publicized to another individual. Respondent's distribution of the document to the President and "all interested parties" constitutes the "making" of a statement pursuant to Prof. Cond.R. 8.2(a).

■ Respondent also contends that he was required to distribute his open statement pursuant to Prof.Cond.R. 8.3(b), which provides that a lawyer who has "knowledge" of a judge's violation of applicable rules of judicial conduct which raise a substantial question as to the judge's fitness for judicial office shall inform the proper authorities.[2] However, Respondent failed to show that he had actual knowl-edge of such wrongdoing on the part of the named judicial officials, as evidenced by the content of his open statement. Respondent only had vague and unsubstantiated proclamations of wrongdoing without a single specificity. This Court will not retry the Wade bankruptcy or Respondent's broad allegations of malfeasance therein. Suffice it to say that we are unaware of an iota of reliable evidence supporting Respondent's assertions of judicial misconduct such as to remove them from the realm of mere speculation and conjecture. In light of this, his assertion that he was duty-bound to report misconduct is untenable.

Respondent also asserts that the disciplinary complaint was impliedly amended, and that such amendment deprived him of notice of the charges, as required by *In re Roberts* (1983), Ind., 442 N.E.2d 986. Respondent contends the amendment occurred when the Hearing Officer struck language referring to knowledge of falsity from paragraph four of the complaint, which charged that Respondent made statements with knowledge of their falsity or with reckless disregard as to their truth or falsity concerning the integrity of judges and other judicial officers. Respondent asserts that he was prepared to prove that the allegations in his open statement were true, and that the striking of language pertaining to knowledge of falsity somehow denied him of notice of the charges. We find this argument to be without merit. The amended complaint, of which Respondent had adequate notice prior to hearing, alleged in paragraph four that Respondent made statements that he knew to be false *or* with reckless disregard as to their truth or falsity. The Hearing Officer ultimately concluded that Respondent's statements were made with reckless disregard as to their truth or falsity. Respondent was not denied adequate notice of that charge, since it was contained in the amended complaint both before and after the Hearing Officer struck portions of paragraph four.

---

2. The definitions included in the introduction to the *Rules of Professional Conduct* provide that

" "Knowingly," "Known," or "Knows" denotes actual knowledge of the fact in question."

It is further contended by Respondent that several procedural shortcomings involving discovery and evidentiary issues tainted the disciplinary process, denying him due process. In each instance, the crux of Respondent's argument is that he was denied a full opportunity to prove the truth of the assertions contained in his open statement, and, thereby, to prove that he was duty bound to report the misconduct. However, as we concluded above, Respondent failed to show any factual basis whatsoever that could even remotely lead to reliable evidence supporting Respondent's theory of widespread conspiracy. The Hearing Officer was persuaded by this fact when he concluded that Respondent made the scathing statements with reckless disregard as to their truth or falsity. We agree, and conclude that Respondent's allegations of procedural deficiency are without merit.

We, therefore, find that Respondent's writing and distributing the open statement violated Prof.Cond.R. 8.2(a) in that he made statements with reckless disregard as to their truth or falsity concerning the qualifications and integrity of a judge and of other adjudicatory officers; and that by writing and distributing the document, he engaged in conduct prejudicial to the administration of justice, thereby violating Prof.Cond.R. 8.4(d). We agree with the Hearing Officer that there is insufficient evidence to support a finding that Respondent violated Prof.Cond.R. 3.5(c).

Now that we have found misconduct, it is the duty of this Court to assess an appropriate sanction. In doing so, we examine several factors: the duty violated, the state of mind of the Respondent, the actual or potential injury caused by the lawyer's misconduct, and factors in mitigation or aggravation. *In re La Cava* (1993), Ind., 615 N.E.2d 93. We note that the duty violated by the Respondent was his obligation to refrain from acting in a way that damages the integrity of the judicial system. His actions did not injure any individual client. Rather, his conduct threatened to "unfairly undermine public confidence in the adminis-

tration of justice." See Comment to Prof. Cond.R. 8.2. As we have stated, "[u]nwarranted public suggestion by an attorney that a judicial officer is motivated by criminal purposes and considerations does nothing but weaken and erode the public's confidence in an impartial adjudicatory process." *In re Terry* (1979), 271 Ind. 499, 502, 503, 394 N.E.2d 94. Unfortunately, Respondent's open statement reveals that he was fully aware that, by its distribution, he was violating the *Rules of Professional Conduct.* Such knowledge imparts added culpability to Respondent's acts.

There are several factors in mitigation. Respondent's motivation for writing the offending document appears to have been a sincere desire to represent his clients diligently. Respondent was not seeking personal gain, but rather was vigorously attempting to protect the interests of his clients, albeit misguidedly.

In light of the above considerations, we are convinced a period of suspension adequately addresses the severity of Respondent's misconduct. Further, a suspension for a limited time is appropriate in cases, such as this one, where the offender is not a continued threat to his clients. The imposition of sanction here will also serve to apprise other practitioners that this Court will not tolerate this type of reckless and unsubstantiated diatribe. We are further convinced that Respondent's readmission to the Bar must be subject to his successfully proving to this Court that he has met the elements necessary for reinstatement as set out in Admis.Disc.R. 23, Sections 4 and 18. It is, therefore, ordered that the Respondent, Donald Mark Garringer, be suspended from the practice of law for a period of not less than sixty (60) days, beginning February 7, 1994, at the end of which he may petition this Court for reinstatement under Admis.Disc.R. 23(18).

Costs of this proceeding are assessed against the Respondent.

SULLIVAN, J., not participating.