**In the Matter of Richard W. REED.**

**No. 18S00–9801–DI–62.**

Supreme Court of Indiana.

Sept. 24, 1999.

James A. Schafer, Muncie, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Fredrick L. Rice, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission, in a *Verified Complaint for Disciplinary Action*, charged Richard W. Reed with making statements about the qualifications of a judge with reckless disregard as .to the truth or falsity of the statements, in violation of *Ind. Professional Conduct Rule 8.2(a)*. Pursuant to *Ind. Admission and Discipline Rule 23(11)(c)*, the commission and the respondent tendered for this Court's approval a *Statement of Circumstances and Conditional Agreement for Discipline* wherein they stipulate the facts and agree that the appropriate discipline for the respondent is a public reprimand. In addition, the respondent has submitted to this Court an affidavit as required by *Admis. Disc. R. 23(11)(c)*. Upon review, a majority of this Court has decided to approve the agreement and impose a public reprimand.

We find, as the parties have agreed, that Richard W. Reed is an attorney in good standing in the State of Indiana, having been admitted to the Indiana Bar on October 9, 1974. At all times relevant to this case, the respondent was, and currently still is, the duly elected prosecuting attorney of Delaware County, Indiana. In January of 1996, the Honorable Barbara Gasper Hines was the judge of the Delaware Superior Court No. 3, having been appointed to that position on September 1, 1995, by the Governor of Indiana to fill the vacancy in that court created by the retirement of the former judge. Prior to her assuming the bench, the Delaware County judges referred all welfare-related child support cases (Title IV–D) to be heard by a commissioner. On January 9, 1996, Judge Hines announced that she would begin presiding over the Title IV–D cases

filed in her court rather than referring them to the commissioner. As Prosecuting Attorney, the respondent was responsible for providing legal representation to the State of Indiana in such cases.

The respondent strongly disagreed with Judge Hines's decision to hear the Title IV–D cases, and, on January 10, 1996, expressed his disagreement to Judge Hines in the presence of others. Thereafter, the respondent gave a press interview to reporters from *The Muncie Evening Press* and *The Muncie Star.* During the interview, the respondent made a number of disparaging statements about the qualifications and integrity of Judge Hines which statements were reported verbatim in newspaper articles that appeared in the local press within days of the interview. Following are excerpted portions of the news articles quoting the respondent:

> "Her arrogance is exceeded only by her ignorance," Reed said about Hines in an interview with the *Muncie Evening Press.*

> "The prosecutor had harsh words for Hines ... 'Obviously Barbara has way too much time on her hands,' he said."

> "It's [Judge Hines' decision about hearing her own Title IV–D cases] just petty political squabbling," said Reed. "Whenever Barbara Gasper Hines says anything, I can see a [certain Delaware County political figure's] lips moving."

> "[Judge Hines] also said she'd received reports that child support [Title IV–D court office] workers bought a bucketful of liquor and took it to work before giving it to another judge as a Christmas gift. Reed called the story 'pure fiction.' "She's just making that up to justify her irrational behavior," Reed said."

> "She doesn't have any comprehension of what's going on with respect to those [Title IV–D] cases," Reed said. "And she refuses to learn."

*Indiana Professional Conduct Rule 8.2(a)* provides that a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office. A comment to the *Rules of Professional Conduct for Attorneys at Law* provides the following insight into the reasoning for this rule:

> Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for judicial and public legal offices. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice. *Prof. Cond.R. 8.2, Comment.*

■ The parties agree and we find that by stating inaccurately, and without making any reasonable effort to verify the accuracy of his opinion, that Judge Hines was ignorant, that she was being improperly influenced by politicians, that she had fabricated a report about liquor being present in court offices, and that she had no understanding of Title IV–D cases, the respondent violated the above rule.

■ The parties agree further that the appropriate discipline for this misconduct is a public reprimand. Among the factors this Court examines when deliberating an appropriate disciplinary sanction are the state of mind of the respondent, the duty that was violated, the court's duty to preserve the integrity of the legal profession, and any mitigating or aggravating circumstances. *Matter of Christoff and Holmes,* 690 N.E.2d 1135 (Ind.1997); *Matter of Darling,* 685 N.E.2d 1066 (Ind.1997); *Matter of Conway,* 658 N.E.2d 592 (Ind.1995). In this case, we are struck by the particularly vicious nature of the respondent's comments. His remarks were not precipitous outbursts made in the heat of litigation. They were vituperative, deliberate, premeditated, and broadcast with the clear

intent to embarrass the judge and to detract from the stature of her position. It is the constitutional duty of this Court, on behalf of sovereign interests, to preserve, manage, and safeguard the adjudicatory system of this state. *Matter of Friedland*, 275 Ind. 214, 416 N.E.2d 433 (1981). The respondent's conduct breeds mistrust and lack of confidence in the competence and integrity not only of the criticized judge but of the entire adjudicatory system in this state.

Although a public reprimand is within the range of disciplinary sanctions imposed by this court for similar misconduct, it falls at the less severe end of the spectrum.[1] Were it not for the fact that this sanction is proposed within the context of an agreement, the nature of respondent's acts and the negative effect they have on the integrity of the judicial process may well have been deemed to warrant a period of suspension. Nonetheless, we are mindful that the intent of *Admis.Disc.R. 23(11)(c)*, which sets out the agreement process, is to encourage appropriate agreed dispositions of disciplinary matters. Moreover, the fact that the respondent has apologized to the Honorable Barbara Gasper Hines, has submitted the requisite affidavit acknowledging his wrongdoing, and the Commission's consent to the proposed discipline, persuade us that a public reprimand should be approved. Accordingly, we find that the *Conditional Agreement for Discipline* tendered by the parties should be approved.

It is, therefore ordered, that Richard W. Reed is admonished and reprimanded for the professional misconduct found herein.

The Clerk of this Court is directed to provide notice of this order in accordance with *Admis.Disc.R. 23(3)(d)* and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against respondent.

SULLIVAN, SELBY and BOEHM, JJ., concur.

SHEPARD, C.J., dissents, and would reject the conditional agreement.

DICKSON, J., dissents, and would reject the conditional agreement, believing the sanction is inadequate for the severity of this misconduct.

SHEPARD, Chief Justice, dissenting.

The Court's decision to impose nearly the mildest possible sanction in this case is difficult to justify in light of our decisions in other, similar matters.

For example, in *Matter of Atanga*, 636 N.E.2d 1253 (Ind.1994), the Court suspended for thirty days the president-elect of the Marion County Bar Association for reckless remarks solicited by the editor of an obscure newsletter. That decision issued by a vote of three to two. I agreed then with many of Justice Sullivan's observations about why the penalty was too severe. Atanga was a relatively new lawyer, for example, and he had issued his remarks only upon solicitation and through a medium of so little circulation that there

1. See, e.g., *Matter of Becker*, 620 N.E.2d 691 (Ind.1993) where this court approved a conditional agreement for a thirty day suspension when an attorney stated falsely in an appellate brief that the trial judge had purposely turned off the recording equipment during important testimony and had granted continuances to give opposing party an advantage. In *Matter of Garringer*, 626 N.E.2d 809 (Ind. 1994), this Court imposed a sixty day suspension for an attorney stating falsely in a letter to the U.S. President that federal judges in

Indiana were engaged in criminal conduct. In *Matter of Turner*, 631 N.E.2d 918 (Ind. 1994) this Court, by a three to two majority, publicly reprimanded an attorney, who, after being provoked by poor practices in Marion County Small Claims Courts, called the court a "Mickey Mouse Court." In *Matter of Atanga*, 636 N.E.2d 1253 (Ind.1994) where a three to two majority imposed a thirty day suspension for failure to appear for a hearing and calling a judge ignorant, insecure and a racist and being motivated by political ambition.

was probably no injury at all to the judicial system. *Atanga,* 636 N.E.2d at 1260 (Sullivan, J., dissenting).

In this case, of course, the respondent lawyer is not an inexperienced member of the profession but a seasoned veteran holding an office of great public trust. Moreover, he employed Muncie's biggest news outlet and used this platform multiple times for his attacks on the court. The *Atanga* precedent seems to warrant weightier treatment of the current violation than the majority gives it.

The same could be said concerning *Matter of Turner,* 631 N.E.2d 918 (Ind.1994). In that case, the respondent lawyer made actionable remarks in court, about the court, and received a public reprimand. Two of us dissented, observing that the lawyer had lost his temper when a pro tem "failed" to "remain in control and guard against appearances of preferential treatment," *id.* at 920 (Sullivan, J., dissenting), and that it seemed Turner was the only person held accountable in a situation largely created by the pro tem and opposing counsel, *id.* (Shepard, C.J., dissenting).

There is no sign of similar mitigating circumstances in the current case. Reed's assaults were not the product of any high-pressure moments, and they were not provoked by others. Thus, a public admonition seems too modest a response to the facts in this case. A short suspension seems warranted.

DICKSON, J., concurs.