In the Matter of Michael A. WILKINS.

No. 49S00–0005–DI–341.

Supreme Court of Indiana.

Oct. 29, 2002.

Ronald E. Elberger, Robert B. Clemens, Bose McKinney & Evans, G. Daniel Kelley, Jr., Thomas E. Mixdorf, Ice Miller, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Attorney Michael A. Wilkins is an experienced appellate practitioner. In a brief supporting a petition for transfer to this Court, he stated that an opinion of the Indiana Court of Appeals left him wondering whether the Court of Appeals was determined to find for the adverse party, and whether it then said whatever was necessary to reach that conclusion. We find today that such statements violated Ind.Professional Conduct Rule 8.2(a) and warrant the respondent's suspension from the practice of law in this state.

This case is now before us upon the hearing officer's findings of fact and conclusions of law and the respondent's petition for our review of those findings and conclusions. Where a party petitions this Court for review, we review *de novo* the record presented us to reach the ultimate conclusion as to misconduct and sanction therefore. *Matter of Robak*, 654 N.E.2d 731 (Ind.1995). Additionally, the respondent has requested oral argument on the questions presented in his petition for review. We deny that request.

The respondent is an attorney in good standing, having been duly admitted to

practice law in this state on October 14, 1988. He is a member of the litigation section in the Indianapolis law firm of Ice Miller and concentrates his practice in family and adoption law, appeals, general litigation, and media law. During 1997, 1998, and 1999, the respondent represented and served as local counsel for Michigan Mutual Insurance in an appeal of an adverse verdict from the Vigo Superior Court. On August 27, 1998, the Court of Appeals issued its opinion in *Michigan Mutual Insurance Company v. Sports, Inc.*, 698 N.E.2d 834 (Ind.Ct.App.1998). The court's opinion affirmed the trial court's verdict and award. Thereafter, primary counsel for Michigan Mutual prepared a draft brief to accompany a "Petition to Transfer" to this Court and forwarded the draft to the respondent. The respondent then edited the draft and "toned down" the tenor of the brief.

The respondent believed that *Michigan Mutual Insurance Co. v. Sports, Inc.* misstated material facts and ignored or misapplied controlling precedent, such that transfer to this Court may have been appropriate under Ind.Appellate Rule 11(B)(2)(c) and (f).[1]

Footnote 15 of the Court of Appeals opinion states:

> Specifically, Michigan Mutual claims the Hopper Agency had "limited authority to bind [it] to coverage and accept premiums on its behalf," but not the authority to "alter policy provisions, appoint subagents, or do anything else that general agents typically can do." Michigan Mutual's Brief at 23. It cites neither authority nor evidence in the record to support the latter proposition.

On September 25, 1998, the respondent signed and filed Michigan Mutual's "Petition to Transfer" and "Brief in Support of Appellant's Petition to Transfer" with the Clerk of this Court. Even though the respondent did not necessarily author the words at issue here (a task admittedly performed by Michigan counsel), the respondent signed the brief pursuant to Ind.Admission and Discipline Rule 3(2)(d), and was therefore "jointly responsible therefore."

The respondent, in the "Petition to Transfer" challenged the Court of Appeals' decision, in relevant part, pursuant to App.R. 11(B)(2)(f), by arguing:

> 4. The opinion of the Court of Appeals is in error for the following reasons:
> A. The opinion erroneously and materially misstates the record by making affirmative misstatements regarding the evidence, which directly affected the court's ultimate conclusion (specific misstatements, and their prejudicial effect on Michigan Mutual, are discussed in the accompanying Brief in Support);
> [ . . . ]

The respondent, in the "Brief in Support of Appellant's Petition to Transfer," amplified his client's position, *inter alia* with the following statements:

> The Court of Appeals' published Opinion in this case is quite disturbing. It is replete with misstatements of material facts, it misapplies controlling case law, and it does not even bother to discuss relevant cases that are directly on point. Clearly, such a decision should be reviewed by this Court. Not only does it work an injustice on appellant Michigan Mutual Insurance Company, it establishes dangerous precedent in several areas of the law. This will undoubtedly create additional problems in future cases.[2]
>
> · · ·

---

1. That rule was the precursor to the current

App.R. 57.

2. Indeed, the Opinion is so factually and legally inaccurate that one is left to wonder

whether the Court of Appeals was determined to find for Appellee Sports, Inc., and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision).

On March 5, 1999, this Court denied the "Petition to Transfer" and ordered the supporting brief stricken as a "scurrilous and intemperate attack on the integrity of the Court of Appeals...." *Michigan Mutual Insurance Company v. Sports, Inc.,* 706 N.E.2d 555 (Ind.1999).

At disciplinary hearing, the respondent contended that an agency agreement which had been cited to the Court of Appeals in the record, as well as the testimony of two trial witnesses, supported his contention that the Court of Appeals misstated the record and facts in that there was evidence in the record to establish a limited agency as opposed to a general agency. The respondent also cited case law to the Court of Appeals, which he contended the Court of Appeals ignored.

After this Court issued its decision denying transfer, the respondent contacted the office of the John T. Sharpnack, Chief Judge of the Indiana Court of Appeals, and Randall T. Shepard, Chief Justice of the Supreme Court of Indiana, to schedule meetings with them to offer his personal apology. However, before being able to personally speak with Judge Sharpnack or Chief Justice Shepard, the respondent received the "Request for Investigation" which initiated these disciplinary proceedings, after which he wrote to both Judge Sharpnack and Chief Justice Shepard, offering to apologize in person and to acknowledge that the footnote was "overly-

aggressive and inappropriate and should never have made its way into our Brief."

The Commission charged the respondent with violating Prof.Cond.R. 8.2(a) by making statements that he knew to be false, or with reckless disregard as to their truth or falsity concerning the integrity or qualifications of a judge, or, in this case, a three-judge panel of the Indiana Court of Appeals.[2]

■ The hearing officer found that the respondent violated Prof.Cond.R. 8.2(a) by the statements he made in footnote 2, but did not find a violation as to the other quoted sections, concluding that the statements merely paraphrased provisions of App.R. 11(B), governing grounds for transfer to this Court. We turn back to the language used by the respondent in his petition for transfer and supporting brief:

> The opinion erroneously and materially misstates the record by making affirmative misstatements regarding the evidence ...

> The Court of Appeals' published Opinion in this case is quite disturbing. It is replete with misstatements of material facts, it misapplies controlling case law, and it does not even bother to discuss relevant cases that are directly on point.

We note that relevant portions of former App.R. 11(B)(2) provided:

> Errors upon which a petition to transfer shall be based may include:

> (f) that the opinion or memorandum decision of the Court of Appeals erroneously and materially misstates the record, concisely setting out the misstatement (with reference to the record where appropriate), the materiality of

---

2. Rule Indiana Professional Conduct Rule 8.2(a) states, in relevant part:
   A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to the truth or falsity concerning

the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

the misstatement and specifically stating the resulting prejudice to the petitioner.

We find that the respondent's statements quoted above, although heavy-handed, roughly paraphrase the bases of transfer as set forth in former App.R. 11(b) such as to avoid violation of Prof.Cond.R. 8.2(a).

The respondent's comments in footnote 2, however, are not even colorably appropriate. In footnote 2 of the "Brief in Support of Appellant's Petition to Transfer," the respondent suggested that the judges on the Court of Appeals may have been motivated in their decision making by something other than the proper administration of justice, and, in fact, suggested unethical motivations. We find that his comments in footnote 2 violated Prof. Cond.R. 8.2(a) because they were made with reckless disregard as to the truth or falsity concerning the integrity of a three-judge panel of the Court of Appeals.

In his petition for review, the respondent argues that the application of Prof. Cond.R. 8.2 in this case would be an unconstitutional restriction of free speech. However, he provides no authority specifically illustrating why or how his statements are protected by state or federal constitutional provisions.

In *Matter of Friedland,* 275 Ind. 214, 416 N.E.2d 433 (1981), a respondent attorney was accused of attempting to influence public officials by threatening and publishing critical comments about the Commission. The respondent argued that his conduct was protected free speech. There, we stated:

This Court in the past has not addressed, specifically, the constitutional tension between the First Amendment and the *Code of Professional Responsibility.* Upon reflection of this question, it is our belief that a generalized test cannot be drawn. Each prohibition, circumscribed by the factual setting present in a particular case, must be examined in light of the affected State interest and measured against the limitation placed on the freedom of expression.

*Id.* at 437. The prohibitions in Prof. Cond.R. 8.2(a) are concerned with preserving the public's confidence in the administration of justice. *See, e.g., Matter of Garringer,* 626 N.E.2d 809, 813 (Ind.1994) ("We note that the duty violated by the Respondent [in violating Prof.Cond.R. 8.2] was his obligation to refrain from acting in a way that damages the integrity of the judicial system.... As we have stated, '[u]nwarranted public suggestion by an attorney that a judicial officer is motivated by criminal purpose and considerations does nothing but weaken and erode the public's confidence in an impartial adjudicatory process [other citation omitted].'"). *See also Comment* to Prof.Cond.R. 8.2.[3] Applying the *Friedland* analysis here, we find that the respondent offered no evidence to support his contentions that, for example, the Court of Appeals was determined to find for appellee, no matter what. Without evidence, such statements should not be made anywhere. With evidence, they should be made to the Judicial Qualifications Commission. *See Matter of Becker,* 620 N.E.2d 691 (Ind.1993) (noting that

**3.** That Comment provides, in relevant part:
Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting

attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice.

if a lawyer believes a judicial officer had engaged in misconduct, the appropriate course of action would be to bring a complaint to the Judicial Qualifications Commission). In this case, the state's interest in preserving the public's confidence in the judicial system and the overall administration of justice far outweighed any need for the respondent to air his unsubstantiated concerns in an improper forum for such statements.

We are also not persuaded by the respondent's contention (again unsupported by any cited authority) that his statements were merely a "critique of the Opinion in a format used throughout the bench, bar, and journals." Our current rules of appellate procedure dictate the boundaries of acceptable appellate practice. For example, App.R. 46(A)(8)(a) requires that arguments on appeal must be supported by cogent reasoning, citations to authorities, statutes or the record. A statement used in a document filed before the appellate courts that contains an assertion the lawyer knows to be false or made with reckless disregard as to the truth or falsity concerning the qualifications or integrity of a judge is neither a "format" contemplated by our appellate rules nor allowed by our *Rules of Professional Conduct.*

█ Having found misconduct, we now address the issue of proper sanction. In this analysis, we examine the nature of the violation, specific acts of the attorney, the Court's responsibility to preserve the integrity of the Bar, and any risk to which the public will be subjected if the attorney is permitted to continue in the profession, any consequences that flow from the alleged conduct, the state of mind of the attorney, and any exacerbating or mitigating factors. *Matter of Charos,* 585 N.E.2d 1334 (Ind.1992). The hearing officer found that the respondent has maintained an outstanding and exemplary record for honesty, integrity, and truthfulness among his peers in the Bar, and among members of the judiciary. He also found that the respondent made a full and complete disclosure of the facts surrounding this disciplinary matter and has maintained a completely cooperative attitude toward the disciplinary process. Also cited was his extensive involvement in community and civic activities.

We also consider aggravating factors. Although the parties submitted a written stipulation regarding the respondent's remorse for his actions, the hearing officer found that the respondent's testimony "belied his belief that this disciplinary action stems merely from a poor choice of words." The respondent's stated remorse related only to his feelings of personal embarrassment and public humiliation as the result of this Court's order striking the offending brief. In essence, the respondent averred that, although he might use different language, he believes in the substance of the language contained in the footnote. That he chose to contest this matter through all procedures available under the Admission and Discipline Rules further underscores our conclusion that his remorse only attaches to the fact his statements were not without consequence, notwithstanding his earlier attempts personally to apologize to members of the appellate bench.

Similar instances of violation of Prof. Cond.R. 8.2 have garnered short suspension. *See, e.g., Becker, supra,* (30 day suspension from the practice of law for accusations that a trial judge manipulated the record in order to rule against his client); *Matter of Reed,* 716 N.E.2d 426 (Ind.1999) (public reprimand for stating that the trial court judge's "arrogance is exceeded only by her ignorance," and that "she doesn't have any comprehension of what's going on with respect to those [Title

IV–D] cases and she refuses to learn.";
Chief Justice Shepard and Justice Dickson
dissenting as to the sanction, believing it to
be inadequate). In *Reed*, the respondent
alleged only incompetence. In the present
case, the respondent alleged deliberately
unethical conduct on the part of the Court
of Appeals.

The hearing officer recommended that
the respondent be suspended from the
practice of law for thirty days. Precedent
reveals that a suspension for that period is
generally sufficient for the types of state-
ments made by the respondent. This
Court is quite troubled by the respondent's
continued failure to express remorse for
his actions and, in particular, the strong
indication that he is sorry only for the
negative consequences he suffered because
of his actions. In light of these consider-
ations, we conclude that a thirty-day sus-
pension should be imposed.

It is, therefore, ordered that the respon-
dent, Michael A. Wilkins, be suspended for
a period of thirty (30) days, beginning
December 7, 2002, at the conclusion of
which he shall be automatically reinstated
to the practice of law.

The Clerk of this Court is directed to
provide notice of this order in accordance
with Admis.Disc.R. 23(3)(d) and to the
hearing officer, and to provide the clerk of
the United States Court of Appeals for the
Seventh Circuit, the clerk of each of the
United States District Courts in this state,
and the clerks of the United States Bank-
ruptcy Courts in this state with the last
known address of respondent as reflected
in the records of the Clerk.

Costs of this proceeding are assessed
against the respondent.

SHEPARD, C.J., and DICKSON and
RUCKER, JJ., concur.

SULLIVAN, J., dissents with separate
opinion.

BOEHM, J., dissents with separate
opinion.

SULLIVAN, J., dissenting.

I respectfully dissent. When the re-
spondent here said that "one is left to
wonder whether the Court of Appeals was
determined to find for Appellee ... and
then said whatever was necessary to reach
that conclusion (regardless of whether the
facts or the law supported that conclu-
sion)," the respondent made a statement
of "rhetorical hyperbole," incapable of be-
ing proved true or false. The First
Amendment provides lawyers who use
such hyperbole concerning the qualifica-
tions or integrity of the judge protection
from sanction. *See Standing Comm. on
Discipline of the United States Dist. Court
v. Yagman,* 55 F.3d 1430, 1438, 1441 (9th
Cir.1995). While there is much debate as
to how far this protection extends, I agree
with Justice Boehm that it extends at least
as far as the statement made by respon-
dent here.

BOEHM, J., concurs.

BOEHM, J., dissenting.

I respectfully dissent. I agree with the
Court's conclusion that the quoted passage
from the text of respondent's brief is not a
ground for discipline. Although it is
"heavy handed," it nevertheless asserts
grounds for transfer provided by this
Court's rules.

I disagree that footnote 2, tasteless as it
is, is a ground for disciplinary action. The
footnote asserts that "one is left to wonder
whether the Court of Appeals was deter-
mined to find for Appellee ... and then
said whatever was necessary to reach that
conclusion (regardless of whether the facts
or the law supported that conclusion)." I

do not agree with the respondent's contentions in the offending footnote, and I certainly do not condone the respondent's choice of language in expressing them. Moreover, such intemperate language is very poor advocacy, distracting as it does from the points that are sought to be made. I nevertheless do not believe these opinions are sanctionable. Indeed, I would find them within the broad range of protected fair commentary on a matter of public interest.

Although footnote 2 certainly is understood to challenge the intellectual integrity of the opinion, I do not believe it suggests any motive other than deciding the case in favor of the party the court determined should prevail. It certainly does not suggest criminal motives. In this respect, it seems to me no different from the attacks many lawyers and nonprofessionals have launched on many court decisions, including such notable ones as *Bush v. Gore* and *Brown v. Board of Education.* I cannot see how this footnote differs from the charges occasionally leveled by judges at other judges. For example, Justice Scalia recently contended in *Atkins v. Virginia,* 536 U.S. 304, ——, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (Scalia, J., dissenting) that "[s]eldom has an opinion of this Court rested so obviously upon nothing but the personal views of its members." *See also Webster v. Reproductive Health Servs.,* 492 U.S. 490, 532, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (Scalia, J., concurring) (stating that assertions by Justice O'Connor were "irrational" and "cannot be taken seriously").

Although this Court has previously held that the law of defamation and the law of professional conduct do not overlap, *In re Terry,* 271 Ind. 499, 502, 394 N.E.2d 94, 95–96 (1979), the United States Supreme Court has since made it clear that "disciplinary rules governing the legal profes-

sion cannot punish activity protected by the First Amendment." *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1054, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). It seems clear to me, then, that Justice Sullivan was correct when he noted in *In re Atanga,* 636 N.E.2d 1253, 1259 n. 1 (1994) (Sullivan J., dissenting), that the "actual malice" test of *N.Y. Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), applies to determinations that an ethics violation has occurred by expressing criticism of a legal opinion. That test is a subjective one, and for a violation to have occurred the respondent "in fact [had to have] entertained serious doubts as to the truth of [the] publication." *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

As the Court points out, the respondent set forth the reasons why he believed his criticism of the Court of Appeals was valid. He contends the court's opinion was "factually and legally inaccurate," misstated the record, misapplied case law and did not discuss other relevant cases. He contends that to this day he "believes in the substance of the language contained in the footnote." Although I do not agree with his conclusions, I can find no basis to find that the respondent entertained serious doubts as to the accuracy of his claims. Therefore, I do not agree the respondent's conduct is punishable under Rule 8.2.

Finally, I think we should be very cautious in imposing discipline for lawyers' acts that question the actions or processes of the courts but do not affect client interests. This Court acts as judge, jury, and appellate reviewer in a disciplinary proceeding. The prosecutor, the Disciplinary Commission, relies on this Court for funding and direction. Where the offense consists of criticism of the judiciary, we become the victim as well. This mixed role

is thrust upon us by the State Constitution. I accept it, but believe that it demands the utmost restraint in imposing discipline for expression of criticism of the courts. I would require a finding that a lawyer had at least substantial doubt as to the accuracy of a misstated material fact before sanctioning the lawyer for comments on judicial acts or processes. That standard is not met here.