ATTORNEY FOR THE RESPONDENT
Kevin P. McGoff
Patrick A. Ziepolt
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Seth Pruden, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 71S00-1104-DI-196

IN THE MATTER OF:

THOMAS M. DIXON,

*Respondent.*

Attorney Discipline Action
Hearing Officer Gary L. Miller

**October 8, 2013**

**Per Curiam.**

The Indiana Supreme Court Disciplinary Commission filed a "Verified Complaint for Disciplinary Action," against Respondent Thomas M. Dixon, charging him with attorney misconduct based on statements he made in support of a motion for a change of judge. Respondent's 1995 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

This matter is now before the Court on the report of the hearing officer appointed by this Court to hear evidence on the verified complaint and on the post-hearing briefing by the parties. We conclude that Respondent did not engage in attorney misconduct and therefore enter judgment in Respondent's favor.

## Background

### A. Events Giving Rise to Misconduct Charges

Respondent, a graduate of University of Notre Dame ("Notre Dame"), has practiced law in the South Bend area since 1995. In May 2009, there were pro-life demonstrations in response to announcements that President Barack Obama would speak at Notre Dame and receive an honorary degree. More than 88 individuals were arrested by Notre Dame police and other local police, and were charged with trespass on Notre Dame grounds. Respondent represented 85 of those who were arrested. The 85 cases were consolidated into a single case, State of Indiana v. All Consolidated Cause Defendants, under Cause No. 71D01-0905-CM-03246. Respondent planned to present a novel defense for his clients—that they had a contractual right to pray on the Notre Dame campus originating in Catholic canon law.

The consolidated case was assigned to Judge Jenny Pitts Manier ("Judge Manier") in St. Joseph Superior Court. Judge Manier is married to Professor Edward Manier, who was a tenured professor at Notre Dame and taught there for 48 years. Professor Manier retired in 2007. He continues to have teaching privileges at Notre Dame, although he does not teach, and he has a research grant.

Judge Manier had presided in an earlier case entitled Kendall v. City of South Bend, 71D07-0602-PL-52, a case in which Judge Manier ruled that Kendall, a pro-life supporter, was subject to an injunction regarding an abortion facility that was entered in a different case years earlier. Respondent represented Michael Marsh, who sought to intervene, asserting that he was similarly situated to Kendall and that his rights would be affected by the decision in that case. Judge Manier had denied intervention.

On August 28, 2009, Respondent filed an 11-page Motion for Change of Judge to have Judge Manier recuse herself from the consolidated case. The motion included a three-page affidavit from Respondent ("First Affidavit") and supporting exhibits. After a hearing, Judge Manier denied the motion. On September 28, 2009, Respondent filed a 17-page motion to

reconsider with supporting exhibits, including his nine-page supplemental affidavit ("Second Affidavit"). Judge Manier also denied the motion to reconsider.

Respondent sought Judge Manier's recusal based on her husband's alleged advocacy in favor of pro-choice causes and academic freedom for Notre Dame, along with Judge Manier's failure to disclose this alleged advocacy. Respondent argued that his clients were arrested because they acted on beliefs about abortion and academic freedom for Notre Dame that were directly contrary to the beliefs allegedly advocated by Professor Manier during his career. Judge Manier also made statements that Respondent believed were inaccurate about her husband's writings at the hearing on the Motion for Change of Judge. In addition, Respondent cited Judge Manier's allegedly erroneous rulings in Kendall as a basis for recusal.

On October 8, 2009, Respondent filed a Motion for Certification of an Interlocutory Appeal requesting to appeal the recusal issue. Judge Manier certified the issue for appeal, but before the issue reached the Court of Appeals, Judge Manier filed a grievance against Respondent with the Commission and recused herself from the case.

Respondent filed timely notices of tort claim against Notre Dame related to potential civil suits by his clients against the University in order to preserve his clients' rights in the event the University was found to be a government entity. Both the civil and criminal cases were resolved in 2011. Under the settlement, the clients agreed to release all claims against Notre Dame and the State dismissed all criminal charges against all of Respondent's clients.

**B.     The Commission's Charges of Misconduct**

In its verified complaint, the Commission asserts that several statements Respondent made in the Motion for Change of Judge, Motion to Reconsider, First Affidavit, and Second Affidavit violated Indiana Professional Conduct Rule 8.2(a), which provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."

3

Specifically, the Commission asserts that the following statements Respondent made in support of his Motion for Change of Judge violated Rule 8.2(a):

> Statement A.  "Such large scale litigation, and the results therefrom, could adversely impact Notre Dame's bottom line, which in turn could have a negative impact on Notre Dame's current and future employees.  It is in Professor Manier's interest to see that this does not occur.  In short, Judge Manier  and her husband are simply too intertwined with, and invested in, the University of Notre Dame and its mission to be allowed to preside over these cases."

> Statement B.  "Judge Manier's inability to admit the intellectual and political (in the sense of policy setting) consanguinity between her husband's career mission and Notre Dame's current mission, **calls into profound question her ability to navigate the waters of defendants' legal defenses** related to their contractual rights to be where they were when they were arrested."

> Statement C. "Judge Manier's ruling applying the injunction to Mrs. Kendall can be explained in only one of two ways: either Judge Manier did not understand the privity requirement of Trial Rule 65, **or she did not feel duty bound to apply the rule because she was biased in favor of the abortuary**."

> Statement D.  "Judge Manier's refusal to allow Marsh into the case, when she knew Mrs. Kendall wanted out of the case, **demonstrates to me that she was willing to ignore the applicable legal standards in order to move the case in a direction that negatively affected Marsh's legal rights** without giving him the ability, as required by Trial Rule 24, to have a voice in the process or defend the same."

Verified Complaint at 2-4 (emphasis added to show the segments the hearing officer ultimately concluded to violate Rule 8.2(a).)

## C.    The Hearing Officer's Conclusions

Statement A.  The Commission alleged that Respondent's statements that Judge Manier's husband's relationship with Notre Dame prejudiced her ability to decide his clients' case fairly was not based on the law and facts.  The hearing officer concluded that Respondent did not state that Judge Manier's connection to Notre Dame actually prejudiced her ability to preside over the Notre Dame trespass cases.  Rather, he stated that Judge Manier and her husband are "simply too intertwined with, and invested in, the University of Notre Dame and its mission to be allowed to preside over these cases."  The hearing officer concluded that the Commission's allegation that

4

Statement A violated Rule 8.2(a) is not supported by the evidence. The Commission does not challenge this conclusion.

Statements B through D. The hearing officer began by observing that the Commission did not allege that Respondent's statements about Professor Manier's advocacy and Judge Manier's alleged failure to disclose this advocacy were false or made with reckless disregard for the truth, and it presented no evidence that would support such a finding. The hearing officer concluded that "[m]ost, if not all, of Dixon's specific factual allegations about Judge Manier's connections to Notre Dame through her husband and her decision in Kendall were arguably correct or reasonably-supported by available information through the testimony of Judge Manier and other evidence submitted at the hearing." Also, "Dixon's ultimate statements on the issues of recusal were essentially legal in nature. Dixon articulated several facts and then asserted that these facts met the standard for recusal under Indiana legal precedent." Nevertheless, the hearing officer concluded that the bolded parts of Statements B through D violated Rule 8.2(a):

> Respondent was completely free to note the factual or legal errors that he believed Judge Manier to have made, however his comments go beyond the scope of argument. To argue that the Court has made an error is one thing, to argue that a Court has **intentionally committed that error due to an improper motive** is another. These comments went beyond legal argument, they became personal, and violate current professional standards.

(Emphasis added.) The Respondent filed a petition for review challenging this conclusion.

## Discussion

**A.     Competing "Subjective" and "Objective" Tests for Truthfulness**

The parties dispute the standard that should be used to determine whether an attorney's statement about a judge violates Rule 8.2(a).

One possibility is the "subjective" standard enunciated in New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). New York Times, a defamation case, held that First Amendment protections for speech and press prohibit a public official from recovering damages

for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." As the United States Supreme Court later explained in another defamation case, "actual malice" is a subjective standard and requires "sufficient evidence to permit the conclusion that the defendant **in fact entertained serious doubts as to the truth of his publication**"—that is, "that the defendant **actually had a high degree of awareness of probable falsity**." Harte–Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688 (1989) (citations and internal quotations omitted; emphasis added). Although Respondent cites treatises favoring the "subjective" New York Times test, there appear to be few, if any, attorney discipline actions that apply the Harte–Hanks test (i.e., serious doubts about the truth of the statement; high degree of awareness of probable falsity).

Instead, attorney discipline cases generally apply a somewhat more stringent "objective" test for falsity, with the Ninth Circuit Court of Appeals typifying that approach. First, United States Dist. Ct. v. Sandlin, 12 F.3d 861 (9th Cir. 1993) found that the purely subjective New York Times standard was unsuited to attorney disciplinary proceedings under the State of Washington's analog of Rule 8.2(a), even though its language, like Indiana's, closely tracked New York Times. Id. at 867. Instead, the court applied an objective standard, requiring the court to determine "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances," and focusing on whether the attorney had a reasonable factual basis for making the statements. Id. Two years later, Standing Comm. on Discipline of the United States Dist. Court v. Yagman, 55 F.3d 1430 (9th Cir. 1995) held that a statement of opinion (in that case, a charge of anti-Semitism) based on fully disclosed facts can be punished as defamatory only if the stated facts themselves are false and demeaning. *See* id. at 1439.[1] Yagman also noted that Sandlin's objective test is consistent with the decisions of most state courts that have considered this issue, including the Indiana case of Matter of Terry, quoted above and discussed below. Yagman, 55 F.3d at 1437 n.12.[2]

---

[1] Yagman also held that statements of rhetorical hyperbole and statements that use language in a loose, figurative sense are not sanctionable. *See* id. at 1438.

[2] Yagman cites only one case as adopting the New York Times subjective test: State Bar v. Semaan, 508 S.W.2d 429, 432-33 (Tex. Civ. App. 1974).

**B.      Survey of Indiana Cases**

This Court has never decided squarely whether a subjective or objective test applies to the truth or falsity of attorney statements about judges. Our prior cases, though, imply a rejection of the "subjective" standard applied in defamation cases, and have applied what is in practice an "objective" test.

In Matter of Terry, 271 Ind. 499, 394 N.E.2d 94 (1979), *cert. denied,* the respondent attorney had been suspended without pay as a judge by an opinion authored by Justice Donald H. Hunter. Thereafter, the attorney asserted in correspondence to public officials that Justice Hunter conspired with others to conceal alleged criminal activity of another person, and that this was the motivation for Justice Hunter in entering the order of suspension. There was no basis for these allegations. The attorney asserted that his statements were constitutionally protected. The Court rejected the attorney's invocation of defamation cases in the context of attorney discipline:

> The Respondent is charged with professional misconduct, not defamation. The societal interests protected by **these two bodies of law are not identical**. Defamation is a wrong directed against an individual and the remedy is a personal redress of this wrong. On the other hand, . . . [p]rofessional misconduct . . . is not punished for the benefit of the affected person; **the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations.**

394 N.E.2d at 95-96 (emphasis added). The Court found that the attorney's statements violated the Code of Professional Responsibility and his oath as an attorney. For this and other misconduct, the Court (without Justice Hunter's participation) disbarred the attorney. Terry did not specify whether it was following a subjective or objective test, but it is consistent with Sandlin's objective test. (Without a discussion of whether the attorney had any serious doubts about his allegations, though, it is it unclear whether the same result would have obtained under the New York Times subjective test.)

In Matter of Atanga, 636 N.E.2d 1253 (Ind. 1994), this Court applied a test consistent with Sandlin's objective test. There, a criminal defense attorney was charged with violating Rule 8.2(a) for his comments about a judge, made to a reporter and published by the paper: "I think

he is ignorant, insecure, and a racist," and accusing the judge of being motivated by political ambition, being part of the prosecution, and engaging in judicial tyranny.

Even though the majority first noted that the attorney did *not* raise a First Amendment constitutional challenge to the charge, it—like Sandlin and Yagman—inquired into the attorney's factual basis for his comments:

> As presented to this Court, the question is one of state of mind and conduct. What did Respondent know at the time he made the statements about the Tippecanoe Superior Court? **Did he have a basis upon which to make statements concerning the Court?** . . . **Were the statements reckless in light of his knowledge and experience?**

Id. at 1257 (emphasis added). The majority found that the attorney indeed had reason to complain about the trial court's administration of the case, "related to the events which had occurred in the case and matters specifically known to the Respondent," so that if counsel "[h]ad . . . confined his comments along these lines, there could be no finding of 'reckless disregard.'" But the majority concluded that referring to the judge as "ignorant, insecure, and a racist" violated Rule 8.2(a) because "**there [was] no basis upon which to conclude that [those] comments were anything else but reckless.**" Id. at 1258 (emphasis added).

The absence of a factual basis for an attorney's comments—the heart of an objective test—was again dispositive in Matter of Wilkins, 777 N.E.2d 714 (Ind. 2002), *on reh'g*, 782 N.E.2d 985 (2003), *cert. denied*. There, the respondent filed a petition to transfer containing the following footnote:

> Indeed, the [Court of Appeals] Opinion is so factually and legally inaccurate that one is left to wonder whether the Court of Appeals was determined to find for [the appellee], and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision).

777 N.E.2d 715-16. This Court concluded that the respondent violated Prof. Cond. R. 8.2(a) by this statement, partly because "the **respondent offered no evidence** to support his contentions that, for example, the Court of Appeals was determined to find for appellee, no matter what." Id. at 717 (emphasis added). By a vote of 3-2, the Court imposed a thirty-day suspension with automatic reinstatement.

8

On the respondent's petition for rehearing, the Court stated: "Lawyers are completely free to criticize the decisions of judges. As licensed professionals, they are not free to make recklessly false claims about a judge's integrity." Matter of Wilkins, 782 N.E.2d 985, 986 (Ind. 2003). We emphasized that the statement was sanctionable for "ascrib[ing] bias and favoritism to the judges authoring and concurring in the majority opinion of the Court of Appeals" and "impl[ying] that these judges manufactured a false rationale in an attempt to justify their pre-conceived desired outcome." Id. Nevertheless, the Court granted rehearing in part to impose a public reprimand rather than suspension.

## C. Indiana's Standard for Determining Rule 8.2(a) Violations

The prohibition against making a statement about a judge that the lawyer *knows to be false* is fairly straightforward, even though such actual knowledge might be difficult to prove in many cases. Not surprisingly, it is the prohibition against making a statement about a judge *with reckless disregard as to its truth or falsity*—as charged in this case—that is more often disputed. For such cases, we are now persuaded to join the majority view of other jurisdictions and expressly adopt an objective standard for determining when a statement made by an Indiana attorney about a judicial officer violates Rule 8.2(a). In formulating that standard, we are guided by the following considerations.

First, the limits on professional speech by attorneys are not coextensive with the limits of the First Amendment. This Court has distinguished between the societal interests protected by the First Amendment and by rules governing professional conduct. *See* Terry, 394 N.E.2d at 95-96. The First Amendment protects the societal interest of enabling robust public discourse on issues of public concern, and its protections are therefore necessarily very broad. However, this interest must be balanced against the societal interest in the public's confidence in an impartial adjudicatory process, which unwarranted public accusations by an attorney against a judicial officer do nothing but weaken and erode. *See* Terry, 394 N.E.2d at 96. We conclude that the latter societal interest is not sufficiently protected by the New York Times subjective test, under which an attorney could be sanctioned only if he or she subjectively entertained serious doubts as

9

to the truth of the statement at issue and actually had a high degree of awareness of its probable falsity.

Second, attorneys are expected to exercise reasonable objectivity in their statements about judicial officers. We expect those who have been granted the special privilege of admission to the bar to bring reasonable objectivity to their statements about judicial officers; to rise above the raw emotions and accusations that impede rather than enhance the judicial process. This, we note, also has the incidental benefit of fostering effective advocacy for their clients. An objective test is most consistent with that expectation, and with attorney discipline precedent in Indiana and other jurisdictions.

We therefore adopt an objective test for attorney statements under Rule 8.2(a): Did the attorney lack any objectively reasonable basis for making the statement at issue, considering its nature and the context in which the statement was made? *See* Yagman, 55 F.3d at 1437; Sandlin, 12 F.3d at 867. The extent to which the attorney discloses accurate facts to support the statement is relevant to the determination of whether the attorney acted in reckless disregard as to its truth or falsity. *See* Yagman, 55 F.3d at 1439.

## D.    Analysis of the Charges against Respondent

Under those principles, Respondent did not violate Professional Conduct Rule 8.2(a) by making "a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Comment [1] to this rule states:

> Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. **Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice.**

(Emphasis added.)

10

Rule 8.2 violations often arise in the context of public comments by attorneys outside a legal proceeding. *See, e.g.,* <u>Matter of Reed</u>, 716 N.E.2d 426 (Ind. 1999) (prosecutor's statements to press that newly appointed judge was ignorant, was being improperly influenced by politicians, had fabricated a report about liquor being present in court offices, and had no understanding of the cases); <u>Matter of Atanga</u>, (discussed above); <u>Matter of Garringer</u>, 626 N.E.2d 809 (Ind. 1994) (lengthy "open statement" charging bankruptcy court officials with misconduct and criminal acts), *cert. denied*. However, Rule 8.2 violations have sometimes arisen from statements made within a legal proceeding. *See, e.g.,* <u>Matter of Wilkins</u>, (discussed above); <u>Matter of Becker</u>, 620 N.E.2d 691 (Ind. 1993) (statement in appellate brief falsely accusing trial court of causing recording of hearing to be turned off during important testimony). In either context, the objective standard we adopt today, standing alone, is sufficient to balance the public interest in candid discussions about judges' qualifications against the competing interest in maintaining public confidence in the administration of justice. Prof. Cond. R. 8.2(a), Comment [1].

But in this case, Respondent's statements were made not just within, but as material allegations of, a judicial proceeding seeking a change of judge on three grounds, each of which *affirmatively requires* alleging personal bias or prejudice on the part of the judge. Respondent principally relied on Criminal Procedure Rule 12(B), which provides:

> In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. **The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists**, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

(Emphasis added.) Second, he cited Indiana Code section 35-36-5-2, providing for a change of judge if the judge "is biased or prejudiced against the moving party and that the moving party cannot obtain a fair trial before the judge," "is disqualified by reason of any conflict of interest," or "should be disqualified for any other cause." Finally, he also cited Rule 2.11(A) of the Indiana Code of Judicial Conduct, which states: "A judge shall disqualify himself or herself in

11

any proceeding in which the judge's impartiality might reasonably be questioned." In seeking Judge Manier's recusal, Respondent alleged both bias and the appearance of bias.[3]

But even though Rule 8.2 holds attorneys to a higher disciplinary standard than New York Times does in defamation cases, we also recognize that attorneys need wide latitude in engaging robust and effective advocacy on behalf of their clients—particularly on issues, as here, that *require* criticism of a judge or a judge's ruling. And as discussed above, in seeking a change of judge under Criminal Procedure Rule 12(B), a party must allege personal bias or prejudice on the part of the judge—and an attorney must therefore be allowed to assist the client in doing what the rule requires. A motion for a change of judge due to personal bias is inherently sensitive, but it implicates the client's fundamental due process right to a neutral decision maker. Counsel's advocacy on such matters must not be chilled by an overly restrictive interpretation of Rule 8.2(a).

We will therefore interpret Rule 8.2(a)'s limits to be the least restrictive when an attorney is engaged in good faith professional advocacy in a legal proceeding requiring critical assessment of a judge or a judge's decision. In any other context, counsel's advocacy would be limited only by Professional Conduct Rule 3.1, which requires only "a basis in law and fact . . . that is not frivolous," and Indiana Trial Rule 11(a), under which an attorney's signature "constitutes a certificate by him that he has read the pleadings; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay." And while criticism of a judge necessarily implicates Rule 8.2(a), even in genuine professional advocacy, any further restrictions of counsel's advocacy on that sensitive subject should be as minimal as possible.

We first note what is *not* at issue. The Commission does not allege, nor is there any evidence, that Respondent acted in bad faith or that his Motion for Change of Judge was

---

[3] The term "recusal" is often used interchangeably with the term "disqualification." *See* Ind. Jud. Cond. R. 2.11, cmt. [1].

frivolous or unsupported by sufficient allegations of fact.[4] The hearing officer did not find that Respondent made the statements at issue knowing them to be false. Thus, the only issue is whether Respondent made the four specific statements at issue with reckless disregard as to their truth or falsity in violation of Rule 8.2(a). Again, the test we apply is whether Respondent's basis for making the statements at issue was objectively unreasonable considering their nature and context, including the extent to which Respondent supported the statements with accurate facts. And because Respondent was engaged in good faith professional advocacy in a legal proceeding requiring critical assessment of a judge, specifically, allegations of personal bias or prejudice required by Criminal Procedure Rule 12(B), we apply Rule 8.2's limits in the least restrictive manner.

Under those principles, we readily conclude that the Respondent's statements were not sanctionable:

Statement A. As noted above, the Commission does not challenge the hearing officer's conclusion that Statement A does not violate Rule 8.2(a). We agree and find no violation regarding Statement A.

Statement B. The hearing officer concluded that the emphasized part of the following statement violated Rule 8.2(a):

> "Judge Manier's inability to admit the intellectual and political (in the sense of policy setting) consanguinity between her husband's career mission and Notre Dame's current mission, **calls into profound question her ability to navigate the waters of defendants' legal defenses** related to their contractual rights to be where they were when they were arrested."

Unlike the offending statement in Wilkins, this does not suggest improper motivation for the judge's rulings. Rather, it relates to Respondent's allegation of personal bias or prejudice required by Criminal Procedure Rule 12(B). We therefore conclude that Statement B does not violate Rule 8.2(a).

---

[4] Respondent's Motion for Change of Judge was mooted when Judge Manier recused herself before the issue could be decided on appeal. We express no opinion on the merits of this motion.

<u>Statements C and D.</u>  The hearing officer concluded that the emphasized parts of the following statements violated Rule 8.2(a):

> C. "Judge Manier's ruling applying the injunction to Mrs. Kendall can be explained in only one of two ways: either Judge Manier did not understand the privity requirement of Trial Rule 65, **or she did not feel duty bound to apply the rule because she was biased in favor of the aborutary.**"

> D.  "Judge Manier's refusal to allow Marsh into the case, when she knew Mrs. Kendall wanted out of the case, **demonstrates to me that she was willing to ignore the applicable legal standards in order to move the case in a direction that negatively affected Marsh's legal rights** without giving him the ability, as required by Trial Rule 24, to have a voice in the process or defend the same."

The bolded parts of these statements are somewhat similar in tone and quality to the statement in <u>Wilkins</u> that the plurality found violated Rule 8.2(a), *i.e*., that the Court of Appeals was determined to find for the appellee "and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision)."  777 N.E.2d at 715-16.

However, in contrast to the attorney's speculation in <u>Wilkins</u>, which was based only on the unfavorable decision itself, Respondent supported his charges against Judge Manier with a lengthy recitation of facts, in documents totaling 40 pages in length, in support of his argument that Judge Manier should recuse herself.  Also, Respondent's statements are relevant to, and indeed required for, the relief sought—Judge Manier's recusal.  In contrast, the objectionable statement in <u>Wilkins</u> seems to have been more of a random pot-shot than relevant argument.  We therefore conclude, under the standard articulated above, that the two isolated statements shown above in bold do not violate Rule 8.2(a) considering the entire context in which they were made, including Respondent's supporting facts.

### Conclusion

The Court concludes that none of the statements at issue, which Respondent made in support of his Motion for Change of Judge, violated Indiana Professional Conduct Rule 8.2(a),

considering the entire context in which the statements were made, including Respondent's supporting facts.  We therefore enter judgment in favor of Respondent.

The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer and to the parties or their respective attorneys.  The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

All Justices concur., except Justice Rucker, who concurs in part and dissents in part.

**Rucker, Justice, concurring in part and dissenting in part:**

I concur in that portion of the Court's opinion adopting an objective standard for determining when a statement made by an Indiana attorney about a judicial officer violates Rule 8.2(a). However, I disagree with the Court's conclusion that Respondent did not violate the Rule in this case. There is little to no daylight between the highlighted portions of Statements C and D and the statements a majority of this Court found sanctionable in Matter of Wilkins. I agree with the hearing officer that Respondent's "comments went beyond legal argument, they became personal, and violate current professional standards". In my view Respondent violated Rule 8.2(a) and should be sanctioned accordingly.